Case 3:06-cv-01589-RGJ-MLH Document 64 Filed 03/12/08 Page 1 of 8 PageID #: 546

RECEIVED
IN MONROE, LA

MAR 12 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| SYLVESTER GRIFFIN | CIVIL NO. 06-1589 |
| VERSUS | JUDGE ROBERT G. JAMES |
| JPMORGAN CHASE & CO., ET AL. | MAG. JUDGE MARK L. HORNSBY |

MEMORANDUM RULING

On July 10, 2007, Defendants JPMorgan Chase & Co.; Drew C. Detraz; Charlotte Ray; Bank One Trust Co., N.A.; and JPMorgan Chase Bank, N.A (collectively "Chase")[1] filed a Motion for Summary Judgment. On August 24, 2007, the Court denied the motion and *sua sponte* granted summary judgment for Plaintiff Sylvester Griffin ("Plaintiff"). On November 8, 2007, the Court granted Defendants' Motion to Reconsider and vacated the Court's *sua sponte* grant of summary judgment for Plaintiff. The Court then gave Chase ninety days to oppose summary judgment on the limited issue of whether an invalid portions of the Trust could be severed without defeating the Trust's purpose.

Now before the Court is Chase's Memorandum in Opposition to Motion for Summary Judgment. There are two issues raised in Chase's Memorandum: (1) whether the Court should examine parol evidence to determine the Trust's purpose and (2) whether continuing the Trust without its invalid provisions would defeat that purpose.

---

[1] Defendant Walter E. Busby did not join Defendants' Motion and cannot be located by Chase.

1

I.  **FACTS AND PROCEDURAL HISTORY**

This case arises from a dispute over Chase's refusal to revoke a trust created by Eolyn Griffin ("Mrs. Griffin"), Plaintiff's mother.

Sometime before December 15, 1989, Mrs. Griffin, an elderly black woman from Mississippi, became concerned about keeping her money in a Mississippi bank. According to Plaintiff, his mother had heard about "recent cases, particularly in rural Mississippi, where [money] was taken from blacks." Mrs. Griffin thought Mississippi had "a bad rap in its dealing with [blacks]," but considered Louisiana a "multi-racial state" where they "could get fairness at [a bank]."

Accordingly, on December 15, 1989, Mrs. Griffin and Plaintiff drove from Mississippi to Monroe, Louisiana, to form a trust with the help of Defendant Walter E. Busby, an employee in Central Bank's trust department. Mrs. Griffin, as creator and settlor,[2] executed a Revocable Trust Agreement ("Agreement"). [Doc. No. 11-2]. The Agreement established the Eolyn Griffin Trust ("Trust") and designated Central Bank as Trustee. Through various mergers and asset transfers, the current trustee is Defendant Chase.

During her lifetime, Mrs. Griffin was the sole beneficiary of the Trust and reserved the right to "revoke [the] trust in its entirety." See [Doc. No. 11-2, Articles I & XIII].

In 1991, Mrs. Griffin passed away. Upon her death, Plaintiff and Mrs. Griffin's grandson, Sylvester Griffin, Jr., became beneficiaries of the Trust. See [Doc. No. 11-2, Article III]. The Agreement directs the Trustee to provide income to the beneficiaries as well as any amounts deemed necessary for the support, maintenance, and health of the beneficiaries. See [Doc. No.

---

[2]A trust is created by a "settlor."

2

11-2, Article II]. The Trust also purports to delegate Plaintiff the right to revoke the Trust. See [Doc. No. 11-2, Article III].

The parties agree that Louisiana law does not permit the settlor to delegate the right to revoke; therefore, the Trust provision purporting to allow Plaintiff to revoke the Trust is invalid as a matter of law. The parties continue to dispute, however, whether the right to revoke can be severed without defeating the purpose of the Trust.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard of Review

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. Topalian v. Ehrmann, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. Id.

If the moving party can meet its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. Norman v. Apache Corp., 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in

its favor. Anderson, 477 U.S. at 255.

### B. Whether the Court May Consider Parol Evidence When Determining the Purpose of the Trust

A trust fails as a matter of law if an invalid provision cannot be severed without defeating the trust's purpose. See La. Rev. Stat. § 9:2251 (2007) ("If a provision in the trust instrument is invalid for any reason, the intended trust does not fail, unless the invalid provision cannot be separated from the other provisions without defeating the purpose of the trust."). Generally, courts look to the terms of the trust instrument to ascertain the settlor's intent or purpose in creating the trust. See, e.g., Succession of McLean, 580 So. 2d 935, 940 (La. App. 2d Cir. 1991). If the intent of the parties cannot be determined from the terms of the agreement, the Court may look at parol and extrinsic evidence to ascertain the settlor's purpose. See In re James C. Atkinson Clifford Trust, 00-0253 (La. App. 1 Cir. 6/23/00); 762 So.2d 775, 776. The determination of whether a Trust is clear or ambiguous is a question of law. See Goldin v. Bartholow, 166 F.3d 710, 715 (5th Cir. 1999)("We interpret trust instruments as we do contracts."); Custom-Bilt Cabinet & Supply, Inc. v. Quality Built Cabinets, Inc., No. 32,441 (La. App. 2 Cir. 12/8/99); 748 So.2d 594, 599 ("The determination of whether a contract is clear or ambiguous is a question of law.").

Chase begins by arguing that the Court should reconsider its conclusion that the Trust is ambiguous. In a previous decision, this Court noted several parts of the Trust purport to vest Plaintiff with the right to revoke to the detriment of other beneficiaries. The Court contrasted these revocation provisions with the provisions in Article III of the Agreement, which vest the Trustee with the discretion to make disbursements. The Court then found that the terms of the "Agreement evidence[] competing purposes" and concluded that parol evidence was necessary to

4

determine Mrs. Griffin's intent in creating the Trust.

In its instant motion, Chase argues that, contrary to the Court's previous findings, the Agreement does not evidence "competing purposes." Chase supports its claim with the affidavit of Charlotte K. Ray, an attorney with significant experience specializing in trust and estate planning. According to Attorney Ray, it is not unusual for a trust to vest a party with the right to revoke a trust while simultaneously vesting the trustee with the discretion to make disbursements. Chase asserts that, although the revocation clauses and the disbursement clauses serve different purposes, they do not necessarily conflict.

Assuming arguendo that the Agreement does not evidence "competing" purposes, the Agreement is *still ambiguous* because Mrs. Griffin's purpose in creating the Trust is unclear from the instrument itself. See Custom-Bilt Cabinet & Supply, 748 So.2d 594 at 598 ("[W]hen . . . the intent of the parties cannot be ascertained from the language employed [in a written contract] . . . parol evidence is admissible to clarify the ambiguity and to show the intent of the parties.").

In this case, the Agreement does not include a provision expressly stating Mrs. Griffin's intent. Without such a provision, the Court must look to the instrument as a whole to determine whether its terms unambiguously indicate Mrs. Griffin's intent in creating the Trust.

Many parts of the Agreement indicate that Mrs. Griffin intended Plaintiff to have almost complete control over the Trust. For example, the Agreement granted Plaintiff most powers that Mrs. Griffin had, including the power to revoke. [Doc. No. 11-2, Article III] ("[Plaintiff] shall have the same powers available to the Creator enumerated in Article XIII . . . ."). In fact, the Trust Agreement provided that Mrs. Griffin could not exercise her powers under the Trust *unless she and the Trustee first notified and consulted with Plaintiff.* [Doc. No. 11-2, Article XIII(F)].

5

The Trust also gave Plaintiff the right to change the beneficiaries and to withdraw property from the Trust "in any amount and at any time" [Doc. No. 11-2, Article XIII(A)]. Although Mrs. Griffin granted the Trustee discretion to make investments and disbursements, Plaintiff could always amend the Trustee's discretion. See [Doc. No. 11-2, Article XIII(E)]. Indeed, Plaintiff had the power to remove the Trustee altogether. See [Doc. No. 11-2, Article XIII(B)].

The Trust also indicates that it was important to Mrs. Griffin that she be able to provide for Plaintiff's family if Plaintiff predeceased her. Specifically, the Trust provided that, if Plaintiff predeceased her, Mrs. Griffin would (1) cease to be a beneficiary, (2) the Trust would become irrevocable, and (3) her grandson, Sylvester Griffin, Jr., would become the Trust's beneficiary. Despite these provisions, the Trust provided that Plaintiff could exercise his rights under the Trust "to the absolute detriment and exclusion of Sylvester Griffin, Jr." [Doc. No. 11-2, Article III].

When considered together, these features indicate that Mrs. Griffin intended to give her money to Plaintiff and that the Trustee's discretion was only important if Plaintiff predeceased Mrs. Griffin or died while there was still money in the Trust. But, because the Trust does not *unambiguously* indicate that this was Mrs. Griffin's purpose, the Court must consider parol evidence.

### C. Whether Continuance of the Trust Would Defeat the Trust's Purpose.

The parol evidence confirms that severing the invalid provisions would defeat the Trust's purpose. Specifically, the parol evidence establishes that Mrs. Griffin intended the Trust to give Plaintiff almost complete control over the Trust money, and that the right to revoke the Trust was the most important feature of Plaintiff's control. Plaintiff presented an affidavit where he swore "[my mother] regarded the money as essentially mine," and "[t]he ability for [my mother] and (at

6

her demise) me to terminate the Trust was the all-important feature, without which we would never have given the money to the Defendant, in the first place." [Doc. No. 40-2]. Plaintiff further stated that his mother would not have left the money with the bank if they had not been assured that the Trust was revocable.

Plaintiff, at his deposition, re-emphasized how important it was to his mother that they both be able to revoke the Trust. Plaintiff noted that his mother was concerned that she and her son might not be treated fairly at a bank because they were black. Therefore, Mrs. Griffin wanted the Trust to be revocable because she did not "want to hire somebody that she couldn't fire." It was also important to Mrs. Griffin that Plaintiff be able to revoke the Trust too because she wanted him to have control over money that she considered "basically [his]."

Chase does not dispute Plaintiff's testimony; instead Chase argues that the parol evidence indicates that Plaintiff's ability to control the Trust was not Mrs. Griffin's *sole* reason for creating the Trust. Specifically, Chase notes that Plaintiff stated one of his mother's purposes in creating the Trust was to provide for Sylvester Griffin, Jr. in the event of Plaintiff's death.

The terms of the Trust, however, establish that Plaintiff's ability to revoke the Trust was more important to Mrs. Griffin than her interest in providing for Plaintiff's children. The Agreement expressly provided, "this trust shall remain revocable during [Plaintiff's] lifetime"and that the power to revoke can "be exercised to the absolute determent and exclusion of Sylvester Griffin, Jr." Thus, eliminating Plaintiff's ability to revoke the Trust, even if it would permit the Trust to provide for Plaintiff's son, would defeat Mrs. Griffin's intent.

The terms of the Agreement and the uncontroverted parol evidence establish that the purpose of the Trust was to give Plaintiff broad control over Mrs. Griffin's money, and that the

7

ability to revoke the Trust was the "all-important" feature of this control. Therefore, the Court finds that there is no genuine issue as to the Trust's purpose. The Court further finds that the Trust *fails as a matter of law* because the invalid provision cannot be severed without defeating the Trust's purpose.

## III. CONCLUSION

For the foregoing reasons, the Court finds that the Trust fails as a matter of law, and summary judgment is GRANTED in favor of Plaintiff Sylvester Griffin on this issue.

Monroe, Louisiana, this 12 day of March, 2008.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE